UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RUMBLE, INC.; RUMBLE USA, INC; and RUMBLE CANADA, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 7:24-CV-0115-B |
| WORLD FEDERATION OF ADVERTISERS; DIAGEO PLC; WPP PLC; and GROUPM WORLDWIDE INC., | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants World Federation of Advertisers ("WFA"), Diageo PLC ("Diageo"), WPP PLC ("WPP"), and GroupM Worldwide, Inc. ("GroupM") (collectively, "Defendants")'s Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (Doc. 55) and GroupM's Motion to Transfer (Doc. 64). For the following reasons, the Court **GRANTS** the Motion to Dismiss and **DISMISSES** this case **WITHOUT PREJUDICE** for lack of personal jurisdiction and improper venue. The Court also **DENIES AS MOOT** GroupM's Motion to Transfer (Doc. 64). The Court does not address the merits of Plaintiffs Rumble, Inc., Rumble USA, Inc., Rumble Canada, Inc. (collectively, "Rumble")'s claims. A final judgment will follow.

## I.

## BACKGROUND

This is an antitrust case about advertising. Rumble "operate[s] an online video platform."

Doc. 13, Am. Compl., ¶ 26. Content creators upload their videos "to the Rumble platform . . . for users to view and interact with." *Id.* Rumble also contracts with companies that want to advertise on Rumble's platform. *See id.* Rumble then places "digital advertisements alongside, before, during, and after the videos" uploaded to Rumble's platform. *Id.*

Defendant WFA is a "global organisation representing the common interest of marketers." *Id.* ¶¶ 16–17. In 2019, WFA started an initiative called the Global Alliance for Responsible Media ("GARM"). *Id.* ¶ 1. "GARM's members include advertisers, advertising agencies, and user-generated platforms." *Id.* ¶ 37. GARM was managed by a Steer Team that included advertisers, advertising agencies, and advertising agencies' trade associations. *Id.* ¶ 39. Defendants Diageo and GroupM were on GARM's Steer Team. *Id.* GARM was "controlled by advertisers and their agencies." *Id.* ¶ 41.

GARM developed "brand-safety standards" to ensure that advertisements would not appear next to sensitive content. *Id.* ¶ 46 (quotation marks omitted). For example, GARM members did not want advertisements to "appear alongside content that contains excessive use of profane language or gestures." *Id.* ¶ 47 (quotation marks omitted). GARM members also did not want their advertisements to appear next to the "[i]llegal sale, distribution, and consumption of child pornography." Doc. 57, App'x, 2.[1] And GARM members did not want their advertisements to appear next to content supporting the "[p]romotion and advocacy of graphic terrorist activity." *Id.*

Rumble prides itself on being "a platform that promotes freedom of expression." *Id.* ¶ 28.

---

[1] The Court can consider GARM's Brand Safety Framework in the Motion to Dismiss. Documents attached to the motion to dismiss are considered part of the pleadings if they are (1) referenced in the complaint and (2) central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Here, the Brand Safety Framework is incorporated into the pleadings because Rumble quotes the Framework in the Amended Complaint, Doc. 13, Am. Compl., ¶ 47, and the Framework is central to Rumble's antitrust claims.

Because of this "philosophical choice," Rumble did not "implement policies based on GARM's preferred brand safety standards." *Id.* ¶¶ 27, 29. Rumble alleges that GARM's members boycotted platforms that did not comply with GARM's brand-safety standards. *Id.* ¶ 7. For example, when Rumble tried "to form a commercial relationship with Defendant GroupM . . . GroupM refused to engage with Rumble's outreach." *Id.* ¶ 50. And when Rumble tried "to convince Diageo to advertise on Rumble's platform," Diageo refused to do so because "Diageo had adopted strict brand safety standards." *Id.* ¶ 51.

There are four defendants in this lawsuit. WFA is a non-profit association "organized under the laws of the Kingdom of Belgium and headquartered in Brussels, Belgium." *Id.* ¶ 16. Diageo and WPP are both companies based in England. *Id.* ¶ 18. GroupM is a subsidiary of WPP, and GroupM is headquartered in New York. *Id.* ¶ 20. Rumble alleges that "Defendants and numerous non-defendant co-conspirators collectively agreed to restrict the output of digital advertising on user-generated platforms." *Id.* ¶ 1. Rumble asserts three Sherman Act claims against all four Defendants. *Id.* ¶¶ 88–102.

X Corporation ("X") has filed a similar lawsuit asserting Sherman Act claims against numerous defendants. Compl., *X Corp. v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 1. Rumble argues that personal jurisdiction and venue are proper in this case because of the X case. Doc. 60, Resp., 8–10, 17–18. The X case is also before this Court and several defendants in the X case have filed motions to dismiss the claims asserted against them for lack of personal jurisdiction and improper venue. WFA is the only Defendant in the Rumble case that is also a defendant in the X case. *See* Second Am. Compl., *X Corp. v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 77.

Defendants move to dismiss this case for lack of personal jurisdiction, improper venue, and failure to state a claim. *See generally* Doc. 55, Mot. Dismiss. Defendants argue that "[t]his case has nothing to do with Texas, much less the Northern District of Texas." Doc. 56, Br. Mot. Dismiss, 1. GroupM has also filed a Motion to Transfer this case to the Southern District of New York. Doc. 64, Mot. Transfer, 1. The Court considers the Motions below.

## II.

## LEGAL STANDARDS

A.    *Personal Jurisdiction*

Under Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. It is the plaintiff's burden to establish that personal jurisdiction is proper. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). "To satisfy that burden, the party seeking to invoke the court's jurisdiction must 'present sufficient facts as to make out only a *prima facie* case supporting jurisdiction,' if a court rules on a motion without an evidentiary hearing." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 394 (E.D. Tex. 2022) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). The Court considers "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery" and resolves any factual conflict contained in the parties' submissions in the plaintiff's favor. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

A district court's exercise of personal jurisdiction is only proper if "(1) the forum state's long-arm statute confers personal jurisdiction over [the] defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *E. Concrete*

*Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020) (citations omitted); *see Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018). Here, Texas's long-arm statute authorizes the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause. *Trois*, 882 F.3d at 488. As such, "the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

The federal Due Process analysis is twofold. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

B.    *Venue*

A defendant may move to dismiss or transfer a case for improper venue. FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a). If the Court finds that venue is improper, § 1406(a) requires the Court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1391(b) sets out three categories of proper venue:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

# III.

# ANALYSIS

The Court grants Defendants' Motion to Dismiss because it lacks personal jurisdiction over Defendants, and the Northern District of Texas is an improper venue.[2] Accordingly, the Court dismisses this case without prejudice to its filing in a proper forum.

A.     *The Court Does Not Have Personal Jurisdiction Over Defendants.*

The Court grants Defendants' Motion to Dismiss as to their personal jurisdiction challenge. First, the Court will not defer ruling on whether it possesses personal jurisdiction over Defendants. Second, the Court concludes that it lacks specific personal jurisdiction over Defendants because Rumble's alleged injuries did not arise out of any of the Defendant's contacts with the state of Texas. Third, the Court concludes that Section 12 of the Sherman Act also does not provide the Court with personal jurisdiction over any Defendant. Fourth, Federal Rule of Civil Procedure 4(k)(2) does not provide the Court with personal jurisdiction over any Defendant. Fifth, the Court denies Rumble's request for jurisdictional discovery.

> 1.     The Court Will Not Defer Ruling on Whether it Has Personal Jurisdiction Over Defendants.

Rumble has asked the Court to "at least decline to rule on Jurisdictional and Venue issues until they can also be addressed in the related case, *X Corp. v. WFA, et al.*, 7:24-cv-00114-B (N.D. Tex. filed Aug. 6, 2024)." Doc. 60, Resp., 5. According to Rumble, this Court cannot adequately address the jurisdictional and venue challenge in this case without also considering the allegations

---

[2] WFA suggests that the Court could address whether the Northern District of Texas is a proper venue before addressing whether the Court has personal jurisdiction over Defendants. Doc. 56, Br. Mot., 13 n.7. Because the personal jurisdiction and venue questions significantly overlap, the Court needs to address them both.

in the X case. *See id.* Rumble cites no authority to support this request, and there is no reason for the Court to defer ruling on this Motion. The X case has almost entirely different jurisdictional issues because it involves different parties. WFA is the only party in this case that is also a party in the X case. *See generally* Second Am. Compl., *X Corp. v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 77. Therefore, the Court denies Rumble's request.

    2.  <u>The Court Does Not Possess General or Specific Jurisdiction Over Defendants.</u>

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017). General jurisdiction allows a court in the forum state to hear any claims asserted against a defendant. *Id.* Specific jurisdiction, on the other hand, only permits adjudication of those claims arising out of or relating to the defendant's contacts in the forum state. *Id.*

Rumble concedes that none of the Defendants are subject to general jurisdiction in the state of Texas. Doc. 60, Resp., 7. Thus, the Court must determine whether any of the Defendants are subject to specific jurisdiction. The Fifth Circuit employs a three-step analysis to determine whether a district court may properly exercise specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*E. Concrete Materials, Inc.*, 948 F.3d at 296 (quoting *Monkton Ins. Servs*, 768 F.3d at 433). If the plaintiff establishes the first two steps, "the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable." *Id.*

*i. Defendants do not have minimum contacts with Texas.*

Rumble has failed to demonstrate that Defendants have minimum contacts with Texas. The Amended Complaint includes one paragraph on personal jurisdiction. Doc. 13, Am. Compl., ¶ 23. It alleges that "WFA, Diageo, and GroupM each transact a substantial volume of business in this District." *Id.* This is a conclusory allegation that the Court will not accept as true. *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

"When a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts . . . to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction over the tortfeasor . . . ." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). Rumble argues that Defendants have minimum contacts with Texas because "[Defendants] intended to have an effect on digital advertising on user-generated platforms, with the expectation that their conduct would impact the business operations of Texas-based user-generated platforms, advertisers, and users." Doc. 60, Resp., 9. The Court rejects this argument because Rumble's allegations fail to distinguish between the four Defendants. *See id.*

"Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Rumble "may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025) (citation omitted). Thus, Rumble cannot establish that each Defendant has minimum contacts with Texas without saying what actions each Defendant specifically took and how each Defendant intended to affect business operations in Texas. *See id.* Rumble has not alleged any facts demonstrating that any Defendant specifically intended to have an

effect on Texas residents. Therefore, Rumble has failed to meet its burden of establishing that each Defendant has minimum contacts with Texas.

> ### ii. Rumble's causes of action do not arise out of Defendants' forum-related contacts.

Even if Rumble had alleged sufficient minimum contacts, its causes of action do not arise out of Defendants' contacts with Texas. To satisfy the second prong of specific jurisdiction, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (alteration in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264. Stated differently, "[f]or specific jurisdiction [courts] look only to the contact out of which the cause of action arises." *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002).

None of the allegations that gave rise to this lawsuit occurred in Texas. Rumble asserts various antitrust claims against Defendants arising out of the alleged GARM conspiracy to not advertise on Rumble. Doc. 13, Am. Compl., ¶¶ 88–102. But WFA did not establish GARM in Texas. *See* Doc. 13, Am. Compl., ¶ 37. GARM was also not created for the express purpose of targeting Texas companies or residents. Defendants did not join this purported conspiracy in Texas because none of them are based in Texas. *See generally id.* Nor does Rumble allege that Defendants ever met in Texas for the purpose of furthering their conspiracy. Thus, the conduct that gave rise to this lawsuit all occurred outside of Texas.

And while a plaintiff being injured in a state is not sufficient to establish personal jurisdiction there, Rumble did not even experience its injuries in Texas because the three Rumble plaintiffs are not Texas citizens. *See Revell*, 317 F.3d at 473 (noting that a plaintiff suffering an injury in a forum "will not alone support [personal] jurisdiction"); Doc. 13, Am. Compl., ¶¶ 13–15. Therefore, Rumble has failed to allege that its injuries arose out of any of Defendants' contacts with Texas.

Rumble advances little argument that its injuries arose out of any of the Defendants' purported contacts with Texas. Instead, Rumble confusingly spends most of its Response arguing that the Court possesses specific jurisdiction over Rumble's claims because it and X were allegedly injured by the same conspiracy. Doc. 60, Resp., 8–10. But plaintiffs cannot use the injuries suffered by other parties to establish specific personal jurisdiction. *Bristol-Myers Squibb Co.*, 582 U.S. at 265. Thus, Rumble cannot establish that the Court has specific jurisdiction over its claims by arguing that it suffered the same injuries that X, an alleged resident of Texas, suffered. *See id.*

Accordingly, the Court lacks specific jurisdiction over Rumble's claims because Rumble has failed to identify any "connection between the forum and the specific claims" asserted by Rumble in this lawsuit. *See id.* at 256.

### 3.  Section 12 of the Clayton Act Does Not Provide the Court with Personal Jurisdiction Over Defendants.

Section 12 of the Clayton Act has two clauses. It provides that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

The first clause is a "special" venue provision, which provides additional methods for a

plaintiff to demonstrate that venue is proper in antitrust cases. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). The second clause is a personal jurisdiction provision authorizing "worldwide service of process." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005). It gives a court personal jurisdiction over the defendant if the defendant "ha[s] sufficient minimum contacts with the United States [as a whole]," rather than with a specific state. *Fontenot v. Mullins Mfg. Co.*, 85 F.3d 625 (5th Cir. 1996).

The parties dispute whether the special venue and personal jurisdiction provisions are independent from one another or whether they are integrated. If the provisions are integrated, a plaintiff can only use the nationwide personal jurisdiction provision if the special venue provision is satisfied. Rumble contends that the provisions are independent, which would mean that the Clayton Act allows for nationwide personal jurisdiction regardless of whether the special venue provision is satisfied. Doc. 60, Resp., 11–12. Defendants argue that the two provisions are integrated, which means the Clayton Act only authorizes nationwide personal jurisdiction in cases where the special venue provision is satisfied. Doc. 56, Br. Mot. Dismiss, 9–10. Under the integrated approach, the Clayton Act would only authorize nationwide personal jurisdiction if venue were proper in the Northern District of Texas.

There is a circuit split on whether the Clayton Act's special venue and personal jurisdiction provisions are independent or integrated. The Second Circuit, Seventh Circuit, and District of Columbia Circuit Courts of Appeals have held that the two provisions are integrated. *Daniel*, 428 F.3d at 422; *KM Enters., Inc.*, 725 F.3d at 730; *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000). But the Ninth and Third Circuits have held that the two provisions are independent. *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1412 (9th Cir. 1989); *In re Auto.*

*Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 296–97 (3d Cir. 2004).

District courts within the Fifth Circuit are also split on whether the Clayton Act's special venue provision must be satisfied for the statute to authorize nationwide personal jurisdiction. *See Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 530 (N.D. Tex. 2001) (Lynn, J.) (holding that the two provisions are integrated and the Clayton Act only authorizes nationwide personal jurisdiction if venue is proper in the district); *see Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-0155-Z, 2024 WL 1218573, at *2 (N.D. Tex. Mar. 21, 2024) (Kacsmaryk, J.) (same); *but see Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683, 688 (M.D. La. 2002) (holding that the two provisions are independent and the Clayton Act authorizes nationwide personal jurisdiction regardless of whether the special venue provision is satisfied).

To make matters even more confusing, district courts within the Fifth Circuit also disagree on whether the Fifth Circuit has taken a side in the circuit split. *See Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*, 907 F. Supp. 2d 793, 799 (N.D. Miss. 2012) (noting that "the Fifth Circuit has no binding precedent to dictate the outcome" of whether the Clayton Act only authorizes nationwide personal jurisdiction if the special venue provision is satisfied); *see Ramzan v. GDS Holdings Ltd.*, No. 4:18-CV-539-ALM-KPJ, 2019 WL 4748001, at *4 (E.D. Tex. Sept. 30, 2019) (same); *but see Ferko v. Nat'l Ass'n of Stock Car Racing*, No. 4:02-CV-50, 2002 WL 34477591, at *7 (E.D. Tex. Oct. 4, 2002) (concluding that the Fifth Circuit joined the Ninth Circuit by holding that the special venue and nationwide personal jurisdiction provisions operate independently of one another).

The Court first concludes that the Fifth Circuit has not ruled on whether the Clayton Act's special venue and personal jurisdiction provisions are independent or integrated. The Court next holds that the two provisions are integrated, meaning that a plaintiff can only use the nationwide

personal jurisdiction provision if venue is proper under the Clayton Act. Because Rumble has not demonstrated that its venue provision is satisfied, the Clayton Act does not provide personal jurisdiction over Defendants.

> i. *The Fifth Circuit has not taken a side in the circuit split.*

The Court agrees with the majority of district courts that the Fifth Circuit has not taken a side in this Circuit split. Rumble argues that the Fifth Circuit adopted the Ninth Circuit's position. Doc. 60, Resp., 12. In *Access Telecom, Inc. v. MCI Telecommunications Corp.*, the Fifth Circuit explained that "[w]hen jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole to determine whether the requirements of due process have been met." 197 F.3d 694, 718 (5th Cir. 1999). But the Fifth Circuit said nothing about whether Section 12 of the Clayton Act allows for nationwide personal jurisdiction in all antitrust cases or only in antitrust cases where the special venue provision is satisfied. *See id.* The Fifth Circuit only discussed what was required to satisfy due process, but deciding whether the special venue provision and personal jurisdiction provision operate independently is not a due process inquiry. Instead, the answer to this question is a matter of statutory interpretation. Further, the Fifth Circuit did not even discuss the fact that Section 12 of the Clayton Act has both a personal jurisdiction and a special venue provision. Thus, the Court is not persuaded that the Fifth Circuit has taken a side in this Circuit split. Accordingly, the Court must independently decide whether the two provisions operate independently.

> ii. *The Clayton Act only authorizes nationwide personal jurisdiction if its special venue provision is satisfied.*

The Court holds that the Clayton Act's special venue and personal jurisdiction provisions are integrated. Therefore, Section 12 of the Clayton Act only provides nationwide personal

jurisdiction if the special venue provision is satisfied. This interpretation is supported by the text and structure of the statute, and it avoids rendering the special venue provision superfluous.

As always, the Court begins with the text. Section 12 of the Clayton Act has two clauses. These two clauses are in the same sentence and separated by a semicolon. The first clause is a venue provision that provides methods for an antitrust plaintiff to establish that venue is proper. And the second clause is a personal jurisdiction provision that says, "[A]ll process *in such cases* may be served in the district of which [the corporation] is an inhabitant, or wherever it may be found." 15 U.S.C. § 22 (emphasis added).

The structure and text of the statute establish that the Clayton Act only allows nationwide personal jurisdiction if the venue provision is satisfied. First, the personal jurisdiction provision begins with language that links it to the special venue provision. Specifically, it says that "all process *in such cases* may be served." 15 U.S.C. § 22 (emphasis added). "Such" means "of the character, quality, or extent previously indicated or implied." *Such*, MERRIAM-WEBSTER'S DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/such. Thus, "in such cases" refers to cases with the qualities previously described in the special venue provision. Here, "such cases" are antitrust cases brought against a corporation in any district where a corporation is an inhabitant, where it can be found, or where it transacts business. *See* 15 U.S.C. § 22. The District of Columbia Circuit Court of Appeals adopted this exact rationale:

> The language of the statute is plain, and its meaning seems clear: The clause before the semi-colon relates to a supplemental basis for venue in actions under the Clayton Act; the clause after the semi-colon relates to nationwide service of process in antitrust cases; and invocation of the nationwide service clause rests on satisfying the venue provision.

*GTE New Media Servs. Inc.*, 199 F.3d at 1350. The Court finds this reasoning persuasive.

Second, the structure of Section 12 demonstrates that nationwide personal jurisdiction is only proper if the special venue provision is satisfied. The venue and personal jurisdiction provisions are part of the same sentence and are only separated by a semicolon, which suggests that Congress intended for them to operate together. *See KM Enters., Inc.*, 725 F.3d at 729 (explaining that the venue and personal jurisdiction provisions needed to be read together in part because "Congress intentionally joined the two provisions with a semicolon").

Third, the special venue provision would be superfluous if the two provisions operated independently. "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quotation omitted). Crucially, the Clayton Act's two special venue provisions[3] are not the exclusive avenues for an antitrust plaintiff to demonstrate that venue is proper. Instead, these two venue provisions "are supplemented by the general venue provisions of 28 U.S.C.A. § 1391(b)." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3818 (3d ed.). Thus, Rumble could establish that the Northern District of Texas is a proper venue by using the Clayton Act or by showing that venue is proper under the general venue statute, 28 U.S.C. § 1391(b). Under the general venue statute, venue is proper in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* § 1391(b)(1). And for venue purposes, a corporation resides "in any judicial district in which [the corporation] is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

_____

[3] Section 4 of the Clayton Act also allows plaintiffs to initiate antitrust cases "in the district in which the defendant resides or is found or has an agent." 15 U.S.C. § 15. But this provision is not at issue here.

If the Clayton Act's special venue and personal jurisdiction provisions operated independently, the special venue provision would be rendered superfluous. An antitrust plaintiff could first use the nationwide personal jurisdiction provision to establish that any court in the United States has personal jurisdiction over a corporate defendant. And then venue would always be proper under the general venue statute because corporations reside in any district in which they are subject to the court's personal jurisdiction. Thus, if the Court adopted Rumble's interpretation, no antitrust plaintiff would ever need to use the Clayton Act's special venue provision. This result would improperly render the Clayton Act's special venue provision superfluous because the general venue statute would *always* authorize venue over antitrust cases brought against a corporation. *KM Enters., Inc.*, 725 F.3d at 729; *see also Go-Video, Inc.*, 885 F.2d at 1413 (recognizing that its holding may render Section 12's venue provision "wholly redundant"). Therefore, the Clayton Act only authorizes nationwide personal jurisdiction if the special venue provision is satisfied. This reading gives meaning to every term in the statute and is also consistent with the text and structure of Section 12 of the Clayton Act.

Rumble argues that the Court should follow the Ninth and Third Circuit cases. The Ninth and Third Circuits relied on the purpose of the Clayton Act, and the Third Circuit additionally reasoned that Section 12 of the Clayton Act should be given a different meaning when applied to foreign corporations. The Court disagrees with their holdings for several reasons.

First, the approach taken by the Ninth and Third Circuits did not rely on the text of the Clayton Act. Instead, their holdings were attempts to effectuate the overall purpose of the statute. *See Go-Video, Inc.*, 885 F.2d at 1412 (explaining that it needed to "interpret [the] passage in which antecedents and consequents are unclear by reference to the context and *purpose* of the statute as a

whole" (emphasis added)); *see In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 295 (similar).

The *Go-Video* court said that the purpose of Section 12 of the Clayton Act was to provide an "expansion of the bounds of venue" in antitrust cases and "make it easier for plaintiffs to sue for antitrust violations." 885 F.2d at 1410, 1413. But because the Court does not find the text of Section 12 to be ambiguous, "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). Therefore, the Court rejects the approach taken by the Ninth and Third Circuits of attempting to effectuate their perceived purpose of the Clayton Act instead of relying on the statute's text and structure.

But even if the Court were to consider the "purpose of the statute as a whole," that would still not justify the *Go-Video* decision. While the text of the special venue provision makes it clear that Congress intended to expand venue in antitrust cases, that does not mean that "Congress wanted *nationwide* venue" in antitrust cases. *KM Enters., Inc.*, 725 F.3d at 730 (emphasis in original); *see also Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532 (noting that the Ninth Circuit's approach would "completely eviscerate[] any semblance of a venue inquiry in antitrust cases involving corporate defendants" which is a result that "Congress could not have intended"). The Ninth Circuit did not explain why expanding venue in antitrust cases means that Congress intended to eliminate a defendant's ability to challenge venue. Therefore, the Court rejects the approach taken by the *Go-Video* court.

Second, the Court disagrees with the Third Circuit distinguishing between foreign and domestic corporations when it interpreted Section 12 of the Clayton Act. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 296 n.10. There, the court discussed the "tradition" that "suits against aliens were left unrestricted, and could be tried in any district, subject only to the

requirements of service of process." *Id.* at 296 (quoting *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706, 708 (1972). Thus, according to the Third Circuit, the Clayton Act's "service of process provision on foreign corporations is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act." *Id.* at 297.

The statutory text does not support the Third Circuit's approach. Nothing in Section 12 of the Clayton Act or any other provision of the statutory scheme supports giving Section 12 a different meaning in cases where the defendant is a foreign corporation.  And when discussing how federal courts have historically treated foreign defendants differently for venue purposes, the Third Circuit cited a Supreme Court case discussing the Alien Venue Statute. *Id.* at 296 (citing *Brunette Mach. Works, Ltd.,* 406 U.S. at 708). The Alien Venue Statute establishes different venue rules for foreign defendants than domestic defendants. 28 U.S.C. § 1391(d). But the Clayton Act does not mention the Alien Venue Statute. Nor does the Clayton Act expressly incorporate the "tradition" that suits against foreign defendants can "be tried in any district, subject only to the requirement of service of process." *Compare In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 296, *with* 15 U.S.C. § 22. Thus, the *Brunette Machine Works* case does not support distinguishing between foreign and domestic defendants in Clayton Act cases.

Fundamentally, the Clayton Act's special venue and personal jurisdiction provisions must always either be integrated or independent because this is a question of statutory construction. The Supreme Court has explained that courts cannot "give the same statutory text different meanings in different cases." *Clark v. Martinez*, 543 U.S. 371, 386 (2005); *see also Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013) (Sutton, J., concurring) ("[A] statute is not a chameleon. Its meaning does not change from case to case. A single law should have one meaning, and the lowest

common denominator, as it were, must govern all of its applications." (citation omitted)). Thus, Section 12 of the Clayton Act "cannot mean one thing" in a case with a domestic corporate defendant "and another when there" is a foreign corporate defendant. *See City & Cnty. of San Francisco v. Env't Prot. Agency*, 145 S. Ct. 704, 718 (2025) (rejecting a proposed interpretation of a statute that would give a statute different meanings in cases with different facts). Therefore, the Court rejects the approach taken by the Third Circuit.

Accordingly, the Court holds that Section 12 of the Clayton Act only authorizes nationwide personal jurisdiction if the statute's special venue provision is satisfied. And because the Court concludes below that venue is not proper under the Clayton Act, Rumble cannot use the Clayton Act's personal jurisdiction provision to establish that the Court has personal jurisdiction over Defendants.

### 4. Rule 4(k)(2) Does Not Provide the Court with Personal Jurisdiction Over Defendants.

Federal Rule of Civil Procedure Rule 4(k)(2) also does not provide personal jurisdiction over Defendants. "Rule 4(k)(2) provides for . . . personal jurisdiction in any district court for cases arising under federal law where [1] the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and [2] the defendant is not subject to jurisdiction in any particular state." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004); *see also* FED. R. CIV. P. 4(k)(2). With respect to the second requirement, "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams*, 364 F.3d at 651. These two requirements are not satisfied for any Defendant.

> *i. Rule 4(k)(2) does not provide personal jurisdiction over GroupM, Diageo, and WPP because they have conceded to jurisdiction in New York.*

Rule 4(k)(2) does not provide the Court with personal jurisdiction over GroupM because

GroupM has conceded to jurisdiction in the Southern District of New York. *See Adams*, 364 F.3d at 651; Doc. 56, Br. Mot., 12.

Rule 4(k)(2)'s two requirements are also not satisfied for Diageo and WPP. While these two Defendants argue that they do not have sufficient contacts with the United States to satisfy due process concerns, Doc. 56, Br. Mot., 11–12, they have conceded that they would be subject to jurisdiction in the Southern District of New York if the Court finds that they have "sufficient minimum contacts with the United States to satisfy due process." *Id.* at 12–13. Thus, Rule 4(k)(2) cannot possibly give the Court personal jurisdiction over Diageo or WPP. Diageo and WPP either lack sufficient contacts with the United States to satisfy the due process clause. Or they concede that they can be sued in the Southern District of New York, which would also mean that Rule 4(k)(2) does not apply. Either way, one of Rule 4(k)(2)'s requirements is not satisfied with respect to WPP and Diageo. Therefore, Rule 4(k)(2) does not apply to GroupM, Diageo, and WPP, and the Court need not decide whether Diageo and WPP have sufficient minimum contacts with the United States as a whole.

Rumble argues that the Court would only lack jurisdiction under Rule 4(k)(2) if Defendants "prove" that Rule 4(k)(2) does not apply. Doc. 60, Resp., 14. Rumble is incorrect. "The plaintiff bears the burden of establishing personal jurisdiction." *Bailey v. Zehr*, 263 F.3d 163, *2 (5th Cir. 2001). Thus, Defendants do not need to prove that Rule 4(k)(2) does not apply—Rumble needs to establish that 4(k)(2) does apply. *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018).

In support of its argument, Rumble takes a Fifth Circuit quote out of context. Doc. 60, Resp., 14 (quoting *Nagravision*, 882 F.3d at 499). In *Nagravision*, the Fifth Circuit held that the

defendants had the burden "to affirmatively establish that the court lacked personal jurisdiction under 4(k)(2)" only because the defendants moved to set aside a default judgment on the grounds that the court lacked personal jurisdiction over them. 882 F.3d at 499. Here, Defendants are not attempting to set aside a default judgment, so they do not have the burden to prove anything. Accordingly, the Court rejects Rumble's argument.

> *ii. Rule 4(k)(2) does not provide personal jurisdiction over WFA because Rumble has not established that WFA has sufficient contacts with the United States as a whole to satisfy due process.*

WFA did not concede that it is subject to jurisdiction in any specific court in the United States. Instead, it has taken the position "that the Southern District of New York is the appropriate venue to determine whether [WFA] is subject to personal jurisdiction in the United States." Doc. 56, Br. Mot., 13. Thus, WFA contends that this Court should not decide whether WFA is subject to personal jurisdiction in the United States. The Court disagrees. WFA has moved to dismiss this case for lack of personal jurisdiction, which means the Court must determine whether it possesses jurisdiction over WFA. To answer this question, the Court must now decide whether WFA has sufficient minimum contacts with the United States. *See* FED. R. CIV. P. 4(k)(2)(B).

Rumble has not established that WFA has sufficient minimum contacts with the United States as a whole to support personal jurisdiction. Rumble needs to establish that the Court has personal jurisdiction over WFA specifically. *See Calder*, 465 U.S. at 790. ("Each defendant's contacts with the forum State must be assessed individually."). But when discussing the alleged conspiracy throughout its brief and in its Amended Complaint, Rumble generally does not distinguish between the Defendants. *See, e.g.*, Doc. 60, Resp., 12. Such an approach cannot create personal jurisdiction because "plaintiffs may not aggregate defendants' forum contacts and may not establish personal

jurisdiction without specifying who did what." *Pearson.*, 133 F.4th at 442 (citation omitted).

The Fifth Circuit's prohibition on "aggregat[ing] defendants' forum contacts" is especially relevant here. When Rumble argues that the "Defendants' global conspiracy . . . targeted all U.S.-based generated platforms . . . and controlled the advertising decisions of U.S. advertisers," Rumble specifically cites two paragraphs from its Amended Complaint. Doc. 60, Resp., 12 (citing Doc. 13, Am. Compl., ¶¶ 8, 79). But neither of these paragraphs mentions WFA. *See* Doc. 13, Am. Compl., ¶¶ 8, 79. One paragraph just discusses "Defendants and their co-conspirators" without distinguishing between the Defendants and does not specifically discuss WFA. *Id.* ¶ 79.

The other paragraph alleges that WPP and GroupM "agreed not to place client advertisements on platforms like Rumble that do not adopt GARM's one-size-fits-all brand safety standards." *Id.* ¶ 8. And that paragraph alleges that "GARM requires its members to adhere to its policies." *Id.* But this paragraph does not allege that WFA agreed to not advertise on Rumble or that WFA required GARM members to comply with specific policies. *See id.* Therefore, these two paragraphs from the Amended Complaint cannot establish that WFA has sufficient minimum contacts with the United States because they do not discuss WFA at all. *See Pearson*, 133 F.4th at 442. Without specifying what WFA did to further this alleged conspiracy or how WFA directly availed itself of the United States, Rumble cannot establish that WFA has sufficient minimum contacts with the United States to satisfy due process. *See Pearson*, 133 F.4th at 442.

The only action alleged in the Amended Complaint that is specifically attributed to WFA is that WFA co-founded GARM in Brussels and "WFA announced that GARM would discontinue its activities" on August 9, 2024. Doc. 13, Am. Compl., ¶¶ 16, 37. But WFA did not create the purported GARM conspiracy in the United States. Nor does Rumble allege that WFA sent its

employees to the United States to further the alleged conspiracy. Additionally, GARM was not created for the express purpose of targeting United States companies or residents. *See id.* ¶ 42 (alleging that "the purpose of GARM" was "to improve the safety of online environments"). Thus, Rumble has failed to identify any acts taken by WFA to target the United States.

And while Rumble alleges that advertisers and advertising agencies—including some defendants in this lawsuit—would boycott platforms that did not comply with GARM's Brand Safety Framework, *see* Doc. 13, Am. Compl., ¶ 49, Rumble did not allege that WFA engaged in such a boycott or directed companies based in the United States to engage in such a boycott, *cf. EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*, No. 3:15-CV-3454-S, 2019 WL 3503240, at *13 (N.D. Tex. Aug. 1, 2019) (Scholer, J.) (denying a motion to dismiss for lack of personal jurisdiction when the defendant directed Texas-based entities to take specific actions that the plaintiff alleged violated American antitrust law).

The only other contact that WFA has with the United States is its office in New York. Doc. 13, Am. Compl., ¶ 16. However, Rumble does not include any allegations indicating that its claims against WFA arose out of WFA's New York office. Thus, WFA does not have sufficient minimum contacts with the United States as a whole to satisfy due process. *See Revell*, 317 F.3d at 472.

To the extent that Rumble argues that WFA has sufficient minimum contacts with the United States because of GARM's alleged activities, the Court is not convinced. *See* Doc. 60, Resp., 7. The acts of WFA's alleged co-conspirators in furthering the alleged GARM conspiracy cannot be used to establish personal jurisdiction over WFA. "Each defendant's contacts with the forum must be analyzed individually, and a defendant cannot be subject to personal jurisdiction solely because he participated in an alleged conspiracy with a co-conspirator who had contacts with Texas." *Logan*

*Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F.Supp.2d 625, 630–31 (S.D. Tex. 2012). Thus, simply alleging that the GARM conspiracy "require[d] its members to adhere to its policies" cannot be used to establish personal jurisdiction over every co-conspirator. *See* Doc. 13, Am. Compl., ¶ 8. Nor can allegations that WPP and GroupM decided to not advertise on Rumble. *See Logan Int'l Inc.*, 929 F.Supp.2d at 630–31. Instead, Rumble needed to allege how WFA specifically availed itself of the United States in connection with the alleged conspiracy. Rumble failed to do so.

Accordingly, the Court concludes that Rule 4(k)(2) does not provide personal jurisdiction over any of the Defendants.

### 5.  The Court Denies Rumble's Request for Jurisdictional Discovery.

The Court denies Rumble's request to conduct jurisdictional discovery. "[I]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022).[4] But "[a]s the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 263–64 (5th Cir. 2013).

Here, Rumble has failed to meet its burden for receiving jurisdictional discovery. The facts that Rumble claims it will find in discovery are largely the same allegations in its Amended Complaint. *See* Doc. 60, Resp., 14–15 (arguing that discovery will allow Rumble "to demonstrate

---

[4] In *Getagadget*, the Fifth Circuit noted that it was unclear whether a plaintiff requesting jurisdictional discovery in response to a motion to dismiss was procedurally proper. 2022 WL 964204, at *5. This Court will follow *Getagadget*'s lead and assume without deciding that Rumble properly raised the issue of jurisdictional discovery in its Response to Defendants' Motion to Dismiss. *See id.*

that each of the Defendants engaged in activity that was designed to have an effect on digital advertising in Texas"). These allegations are not sufficient to establish personal jurisdiction now, so jurisdictional discovery would be futile. Thus, Rumble has not "present[ed] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between" Defendants and Texas. *See Getagadget*, 2022 WL 964204, at *5. Accordingly, the Court denies Rumble's request for jurisdictional discovery and finds that it does not have personal jurisdiction over any of the Defendants.

B.      *The Northern District of Texas is Not a Proper Venue.*

The Court also grants Defendants' Motion to Dismiss because the Northern District of Texas is an improper venue. The Court first concludes that Section 12 of the Clayton Act does not provide venue because no Defendant transacts business in this District. The Court then finds that the general venue statute is also not satisfied here. Lastly, venue is not proper here just because the related X case is pending in the Northern District of Texas.

1.   Section 12 of the Clayton Act Does Not Provide Venue Here.

The Clayton Act's special venue provision provides that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business.

15 U.S.C. § 22. Thus, venue is only proper if Defendants are inhabitants of the Northern District of Texas, if they are found in the Northern District of Texas, or if they transact business in the Northern District of Texas.

Rumble only argues that venue is proper because Defendants transact business in this District. *See* Doc. 60, Resp., 10–11. "[A] corporation transacts business within their forum

jurisdictions when a substantial business activity is performed within the jurisdiction with continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33 (quotation omitted).

Rumble does not allege facts indicating that any Defendant has such substantial business ties with the Northern District of Texas. Instead, the Amended Complaint only includes the conclusory allegation that "each Defendant transacted business . . . in this District." Doc. 13, Am. Compl., ¶ 24. Rumble does not include any additional facts to support this conclusory allegation, so the Court will not accept it as true. *See Plotkin*, 407 F.3d at 696.

### i. Diageo does not transact business in the Northern District of Texas.

Rumble has not sufficiently alleged that Diageo transacts business in the Northern District of Texas. Rumble only alleges that Diageo's subsidiary, Diageo North America, "has an office in this District" and that the subsidiary "engages in a substantial volume of commerce throughout the United States and in this District." Doc. 13, Am. Compl., ¶¶ 18, 23. "A subsidiary's presence in the district cannot be imputed to the parent for venue purposes so long as the two entities maintain formal corporate separateness." *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (Lynn, C.J.). Rumble has not alleged any facts to suggest that Diageo and Diageo North America failed to "maintain formal corporate separateness." *See id.* Thus, the Court cannot impute Diageo North America's business activities to Diageo. Therefore, Section 12 of the Clayton Act does not provide venue over Diageo.

### ii. GroupM and WPP do not transact business in the Northern District of Texas.

Rumble has failed to sufficiently allege that GroupM and WPP transact business in the Northern District of Texas. GroupM and WPP are advertising agencies. Doc. 13, Am. Compl.,

¶¶ 19–20. WPP is the parent corporation and GroupM is WPP's subsidiary. *Id.* Rumble alleges that GroupM "engages in a substantial volume of commerce" in the Northern District of Texas, *id.* ¶ 20, and that WPP similarly engages in substantial volume of commerce through GroupM, *id.* ¶ 19. Specifically, Rumble alleges that "GroupM represent[s] advertisers that conduct business in this District, and GroupM advises clients on advertising campaigns that target consumers in this District." *Id.* ¶ 23. These allegations are insufficient to render the Northern District of Texas a proper venue.

As discussed above, the Court cannot impute a subsidiary's activities to its parent corporation if the subsidiary and the parent "maintain formal corporate separateness." *Galderma Lab'ys, L.P.*, 290 F. Supp. 3d at 611. Here, Rumble has failed to allege that WPP and GroupM did not maintain formal corporate separateness, which means that GroupM's activities cannot be imputed to WPP for venue purposes. *See id.*

Regardless, Rumble has failed to allege that GroupM transacts business in the Northern District of Texas. Rumble only alleges that GroupM's *clients* conduct business in the Northern District of Texas. Doc. 13, Am. Compl., ¶ 23. There is nothing to suggest that WPP or GroupM performed "a substantial business activity" when GroupM represented advertisers who independently conduct business in this District. *See Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33. And to the extent that Rumble argues that the Court can impute the activities of GroupM's clients to both WPP and GroupM, Rumble cites no authority in support of such a proposition. Accordingly, Section 12 of the Clayton Act does not provide venue over WPP or GroupM.

*iii. WFA does not transact business in the Northern District of Texas.*

Lastly, WFA does not transact business in the Northern District of Texas, which means that

Section 12 of the Clayton Act does not provide venue over WFA. Rumble alleges that "WFA . . . represent[s] advertisers that conduct business in this District." *Id.* ¶ 23. However, Rumble does not explain how WFA performed "a substantial business activity" by representing advertisers who independently conduct business in the Northern District of Texas. *See Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33. Therefore, WFA did not transact business in the Northern District of Texas for the same reasons that GroupM does not transact business in this District.

> *iv. No Defendant transacted business in the Northern District of Texas by controlling their members in this District.*

One court in the Northern District of Texas found that a non-profit membership organization transacted business by controlling the activities of its members in this District. *Open Cheer*, 2024 WL 1218573 at *2. In *Open Cheer*, the plaintiff sued several defendants, including a non-profit membership organization that served as a governing body for cheerleading competitions. *Id.* The defendant had thousands of members that resided in the Northern District of Texas, and the defendant regulated its members' activities in the Northern District of Texas, which was one reason the court concluded that the defendant transacted business in this District. *See id.*

Rumble argues that Defendants transact business in this District because they "exercise[] significant control over the activity of their members" in the Northern District of Texas as GARM "mandat[es] all members implement its anticompetitive restrictions." Doc. 60, Resp., 11 (citing *Open Cheer*, 2024 WL 1218573 at *2). However, WFA is the only Defendant that is a non-profit membership organization. Diageo, WPP, and GroupM are, presumably, for-profit companies that did not require its members or shareholders to comply with the GARM requirements. *See* Doc. 13, Am. Compl., ¶¶ 18–20. Thus, *Open Cheer* is inapposite with respect to Diageo, WPP, and GroupM.

And with respect to WFA, this case is factually distinguishable from *Open Cheer*. Rumble

does not allege that WFA forced any of its members in the Northern District of Texas to comply with GARM's Brand Safety Framework. Instead, Rumble only argues that GARM forced its members to "implement [GARM's] anticompetitive restrictions." Doc. 60, Resp., 16. There are no allegations that WFA conditioned continued membership in the WFA on complying with GARM. In fact, Rumble does not even allege that WFA required WFA's members to comply with GARM's Brand Safety Framework, let alone that WFA required its members located in the Northern District of Texas to comply with the Framework.

And even if WFA required its members to comply with the GARM Brand Safety Framework, that still would not mean that venue is proper in the Northern District of Texas. Rumble alleges that WFA has "members located in this District," Doc. 13, Am. Compl., ¶ 16, but it does not allege how many members are in this District. *See Open Cheer*, 2024 WL 1218573 at *2 (concluding that a non-profit membership organization transacts business in a district when it had thousands of members in the district). So even if WFA required some members in the Northern District of Texas to comply with GARM's Brand Safety Framework, Rumble would still have failed to allege that WFA transacted business of a substantial character because Rumble has not alleged how many WFA members are in this District. *See id.*

Rumble lastly argues that venue is proper under Section 12 of the Clayton Act because "Defendants' actions had an intended effect on business activities in this District." Doc. 60, Resp., 15. This argument lacks merit. Section 12 of the Clayton Act does not provide venue if the defendant *affects* business activities—it only provides venue if the defendant *transacts business* in the district. *See* 15 U.S.C. § 22. Therefore, the generic assertion that Defendants affected "business activity" in the Northern District of Texas does not, without more, mean that this District is a proper venue under

the Clayton Act's special venue provision.

In sum, Rumble does not allege any facts suggesting that any Defendant conducts "substantial business activity . . . within the [Northern District of Texas] with continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33. Thus, venue is not proper under Section 12 of the Clayton Act, which also means that Section 12's personal jurisdiction does not apply in this case.

### 2.  The General Federal Venue Statute Does Not Provide Venue.

Rumble argues that this Court is a proper venue under the general federal venue statute, 18 U.S.C. § 1391(b)(1), and the Alien Venue Statute, 18 U.S.C. § 1391(b)(1). Doc. 60, Resp., 16–17. Rumble only argues that venue is proper under these two provisions because it contends that the Court has personal jurisdiction over all four Defendants. *Id.* Because the Court concluded that it does not have personal jurisdiction over any Defendant, the Court rejects this argument.

### 3.  The Related X Case Does Not Make the Court a Proper Venue for This Case.

Lastly, Rumble attempts to use the related X case to establish that venue is proper in this case. Doc. 60, Resp., 17–18. Rumble argues that this Court is a proper venue because Rumble's case and the X case involve "the same antitrust conspiracy and [are] predicated on the same facts." *Id.* at 17. This argument lacks merit. The fact that a similar lawsuit is currently pending[5] before this Court does not mean that this Court is a proper venue for Rumble's lawsuit. Rumble contends that if it filed this case in a different venue, the court would have transferred Rumble's case to the Northern

---

[5] The Court also notes that several Defendants in the X case have filed motions arguing that the claims against them should be dismissed for lack of personal jurisdiction and improper venue. *See, e.g.,* Defendant Shell Brand International AG's Br. in Support of Mot. to Dismiss for Lack of Personal Jurisdiction and Improper Venue, 18–20, *X Corp v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 143. Thus, it is an open question whether the Northern District of Texas is a proper venue for some of the claims asserted in the X case.

District of Texas "because of the related X Corp. case." *Id.* (citing *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (Kaplan, M.J.)). In support of this argument, Rumble again quotes a case out of context.

In *DataTreasury Corp.*, the court granted a motion to transfer under 28 U.S.C. § 1404(a). 243 F. Supp. 2d at 593. Section 1404(a) provides that "a district court may transfer any civil action to any other district or division *where it might have been brought.*" 28 U.S.C. § 1404(a) (emphasis added). Thus, the *DataTreasury Corp.* court only considered related litigation in the Eastern District of Texas *after* first concluding that the Eastern District was a proper venue. *See* 243 F. Supp. 2d at 594. But the Eastern District of Texas was not a proper venue because of the related case. Accordingly, the Court rejects this argument.

C.    *The Court Denies as Moot GroupM's Motion to Transfer to the Southern District of New York.*

GroupM moves to transfer this case to the Southern District of New York. Doc. 65, Br. Mot. Transfer, 1. However, GroupM only asks that the Court transfer this case "[i]f this case is not dismissed." *Id.* Because the Court is dismissing this case for lack of personal jurisdiction and improper venue, the Court denies GroupM's Motion to Transfer (Doc. 64) as moot.

\* \* \*

In sum, the Court agrees with Defendants that "[t]his case has nothing to do with Texas, much less the Northern District of Texas." Doc. 56, Br. Mot., 1. Accordingly, the Court does not have personal jurisdiction over Defendants, and this Court is not a proper venue for any of Rumble's claims. Because the Court grants Defendants' Motion to Dismiss on personal jurisdiction and venue grounds, the Court will not address the merits of Rumble's claims.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 55). This case is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction and improper venue. The Court **DENIES AS MOOT** GroupM's Motion to Transfer (Doc. 64). A final judgment will follow.

SO ORDERED.

SIGNED: August 13, 2025.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE